Agnes Smith and others *vs.* Henry Atwood.

No. 59.—AGNES SMITH and others, plaintiffs in error, *vs.* HENRY ATWOOD, administrator, &c. defendant.

[1.] An affidavit by a party, that an original paper, of which he desires to make proof by secondary evidence, is lost or mislaid, and after diligent search that he cannot find it, is a substantial compliance with the 50th common law rule.

[2.] Where a party, defendant, is relying upon proof of a settlement of the matter in controversy made by one, who at the time sustained the relation of husband to the complainant suing, and has not express evidence thereof, a paper executed by the husband, he having the right to give the same, making certain acknowledgements as to a settlement of controversies between these persons, and bearing date at a period which, with other evidence may

Agnes Smith and others *vs.* Henry Atwood.

serve to connect the same with the matter on which suit is brought, as proof of a settlement thereof, is proper evidence for the consideration of the jury.

[3.] Where by a marriage settlement personal property is settled upon trustees for the wife during life, and at her death, to the children of the marriage, and if no children, then to the right heirs of the settler (the husband) and by the terms of the instrument, there is no provision for a continuance of a separate estate further than the coverture then contemplated by the parties: *Held*, that upon the death of the husband, leaving no children by the coverture, surviving him, the life estate was executed in the *cestui que trust*, the interest over to the heir which was before uncertain and contingent, became a vested interest in that person, who at that time answered the description of right heir, subject to be divested in favor of any person who might answer that description at the termination of the life estate.

[4.] In such a case, the life estate being executed in the life tenant at the death of the husband; upon the second marriage, it vested in the second husband; who has power to alienate it. If he do so, and adverse possession is taken by the purchaser, the statute of limitations runs against the life tenant, upon her again becoming discovert.

[5.] Where an interrogatory in the bill calls on defendant to show by what pretended claim he refuses to deliver possession of property; and the defendant, in his answer, sets up an assignment from the husband of the complainant (who had the right to execute the same) as such evidence of claim, the matter set up, though in discharge, is yet responsive, because directly called for by complainant, and may be admitted as proof of such assignment.

[6.] It is no error in a court to charge, that an instrument obtained from A, who was in prison, by process issued at the instance of B, was not obtained by duress, if B was only fairly in prosecution of his legal rights by imprisoning A.

[7.] An assignment by a husband of a distributive share to which his wife is entitled, but which is not reduced into possession by him, without her consent defeats her right of survivorship.

The general rule is otherwise, as to her right to an equitable provision out of such property, unless she has formally, and in the mode pointed out by law, consented thereto. But, if this be done with her consent informally given, and with her knowledge the husband receives a consideration therefor, and afterwards dies, and she being a *feme sole*, remains in enjoyment of this consideration for a number of years; she is estopped at a late day from recovering the same.

[8.] Where A, who is administrator, holds property to which B, as one of the distributees was entitled, but which had been assigned to A by the husband of B: *Held*, that it was not error in the Court to charge that if this assignment was made with the consent of B, and A claimed and held the property afterwards as his own, with the knowledge of B, who had become discovert, the Statute commenced to run against her from the time she became a *feme sole*.

[9.] A general exception, without specifications, to the entire charge of the court below which involves many points, is not proper, but the plaintiff, in assigning error, must specify the portions of the charge to which he excepts.

In Equity in McIntosh Superior Court.    Tried before Judge HENRY R. JACKSON, May Term, 1853.

In 1801, John McIntosh departed this life testate.    His will was recorded in 1826.    By it, he gave his entire estate to his wife, Ann McIntosh during her life; allowing a reasonable maintenance to his son, John L. and daughter Margaret; and at her death, he disposed of his property to his children respectively.    In October, 1810, John L. McIntosh intermarried with Agnes Harrell, having previously entered into a marriage contract, by which he settled upon trustees nine negro slaves and their future increase, for her use and behoof during her natural life: and at her death, for the use and behoof of the child, or children, of the marriage: and in default of issue, then the property to revert, and be the right of the said John L, his heirs and assigns, forever.    In 1820, John L. McIntosh died, leaving no child of that marriage surviving him, (several having been born and died during his life) but leaving one daughter by a former marriage, and his widow Agnes.    In 1821 the widow, Agnes, intermarried with George A. Smith.    After the death of John L. McIntosh, his mother, Ann McIntosh, in some way became possessed of all the negroes included in the marriage settlement.    Afterwards, the trustees named in that settlement, brought an action of trover against Mrs. Ann McIntosh for these negroes, and in 1824 a verdict was recovered in their favor for one family of negroes, Maria and her children. In 182–, Henry Atwood intermarried with the daughter of John L. McIntosh, by a former wife; and in 1825 administration upon the estate of John L. McIntosh was granted to Henry Atwood.    In 1826 George A. Smith, and his wife, being in McIntosh county, in some way got possession of one other negro, Moses, and started for their home in *Macon*, Ga.    In *Tatnall* county, Atwood, who pursued, overtook them.    A conflict ensued and a prosecution of Atwood, by Smith, for an as-

sault and battery, upon which Atwood was recognized to appear and stand his trial.    Afterwards, upon their arrival at Macon, Atwood sued out a possessory warrant for the negro Moses, and also a bill *quia timet* to secure the remainder interest in the negroes, recovered in the *trover* action as before stated.    *Smith* in default of bail, upon one or both of these processes, was committed to prison.    While in prison, Smith and Atwood entered into a settlement, by which, and in consequence of which, Smith executed an assignment to Atwood of all the interest of his wife in the remainder of the property, covered by the marriage settlement, and also the entire estate of John L. McIntosh.    In consideration of which, Atwood released to Smith all the interest in remainder to the negroes, then in the possession of Smith.    Atwood dismissed his processes against Smith, and Smith dismissed his prosecution in Tatnall county against Atwood.

In 1831, Atwood purchased of Smith the negroes in his possession for a fair consideration.    In 1833, Mrs. Ann McIntosh died; and in 1836 George A. Smith died.    In 1838, John Hudson, the surviving trustee, under the marriage settlement died, leaving a will with executors nominated.

In 1846, the executors of John Hudson, as trustees under the marriage settlement, filed a bill in equity against Henry Atwood (who, since the death of Mrs. Ann McIntosh, had possession of the negroes) for the purpose of recovering the remainder of the negroes contained in the marriage settlement; and for an account for their hire.    In 1848, Mrs. Agnes Smith filed a bill in equity against Henry Atwood, as administrator of John L. McIntosh, for her distributive share of that estate. To both of these bills Atwood answered, and set up the settlement with Smith ; and the statute of limitations, in bar of a recovery. By consent of counsel, the causes were consolidated and heard together in the Court below, and it is to the rulings of the Court upon that trial, that the present writ of error is founded.

In the course of the investigation, Atwood offered his written affidavit, " That the original relinquishment from George A. Smith to defendant, of all his right, title, and interest in and to

John L. McIntosh's estate has been lost or mislaid by deponent, while on a visit to Florida, several years since; and that after diligent search and inquiry for the same, he has not been able to find it", in order to lay the foundation for secondary evidence of the contents of the paper. The Court held the affidavit sufficient for this purpose, and counsel for complainant excepted.

Defendant then offered in evidence the following paper:

"Mr. Henry Atwood having been arrested at my instance in Tatnall county on a charge of assault and battery, and Mr. Atwood and myself having come to a compromise and settlement of our controversies, I, therefore, at Mr. Atwood's request, state that I am satisfied, and have no further complaint against him; that I shall not suffer my name to be used against him, as prosecutor, as to any matters that took place in Tatnall county; and shall not, if I can lawfully prevent it, suffer the affair to progress any further.

MACON, 4th Jan., 1828.

(Signed)        GEORGE A. SMITH."

The Court held this paper to be relevant evidence, and complainant excepted.

The Court charged the Jury, among other things, "That the marriage settlement negroes never belonged to the estate of John L. McIntosh; and that towards those negroes Atwood never occupied the character of Administrator".

To this charge complainant excepted.

The Court charged, "That at the termination of the life estate in these negroes, neither Mrs. Smith, nor her heirs at Law, would take the property or any part thereof."

To this charge complainant excepted.

The Court charged, "That if the defendant (Atwood) was fairly in the prosecution of his legal rights, his imprisonment of Smith was not a sufficient reason why the release should be set aside for duress".

To this charge complainant excepted.

The Court charged "That if there was a settlement in Ma-

con, with consent of Mrs. Smith, and possession was taken under it, the possession was adverse, provided it was brought to her knowledge; and that if brought to her notice in 1828, she is of course bound—she being a *feme sole*, and competent to sue in 1836".

To this charge complainant excepted.

The Court charged, "That the answer of the defendant (Atwood) in response to the bill, as to the release from Smith to Atwood, of 4th Jan. 1828, was responsive, and as such, evidence of such release".

To this charge complainant excepted. Upon this point the bill charged that Atwood was in possession of the negroes and "claimed the same by doubtful and inconsistent titles", and to which the complainants "consider he had no right or claim to serve as administrator." In the interrogating part of the bill, he was required to state "To whom the said negroes did belong", and "Through whom, and by whom, and by what title he now claims and holds the same". In his answer, the defendant set up his claim through the release executed by Smith.

The Court charged, that "The Statute of Limitations is a bar to complainant's right to recover negroes included in the marriage settlement".

To this charge complainant excepted.

Upon these several exceptions, error has been assigned.

Stubbs & DeLyon for plaintiff in error.

Law for defendant in error.

*By the Court.*—Starnes, J., delivering the opinion.

[1.] While the trial of this cause was progressing, as a foundation for secondary evidence, the defendant in error tendered an affidavit made by him to the effect, that a release which he had obtained from George A. Smith, the husband of the complainant Agnes Smith, had been lost or mislaid by him when on a visit to Florida, and that after diligent search he could not

find the same.   To this, objection was made, on the ground that it was not a compliance with the 50th Common Law rule, which requires the party making the oath to swear to the loss or destruction of the original, and that it was not in his possession, power, or custody.

The affidavit was, in our opinion, rightly admitted.   It was not a compliance with the rule in precise terms, but was so substantially.   If the party had lost or mislaid the paper, and after diligent search could not find it; in contemplation of law, it was lost or destroyed, and in the same legal contemplation, it was not in his possession or custody.   And an oath that he had lost and could not find it, negatives the idea that it was in his possession, &c.   If he had not lost or mislaid the paper, but had it in his possession, power, or custody, without doubt an indictment for perjury could have been sustained against him on this affidavit.

[2.]  The defendant next offered in evidence an instrument, signed by the said George A. Smith, and dated on the 4th day of January, 1828, in which he acknowledged that himself and the defendant had come to a compromise and settlement of their controversies, &c.

This was properly admitted by the Court.   It was of a tenor to authorize presumption in aid of the case, which defendant was endeavoring to make out.   His case, rested in part, upon an alledged settlement and release of claims on him by Smith, in right of his wife.   Controversies in relation to these claims were existing between the parties; suits had been commenced on account of them; and writs issued in these suits against Smith, in the name of defendant, on the 3d day of January, 1828, which were served in the city of Macon, on the 4th of January, 1828, the date of the instrument offered.

When this testimony was tendered, the copy of a release, which it was said had been then executed by Smith, had been rejected, defendant could not know that he would ever be able to get that paper before the jury; and it was therefore proper for him to show, if possible, by any relevant evidence, that such settlement as he relied on had been made.   The paper offered,

bore date at Macon, on the 4th of January, 1828, and acknowledged a settlement of controversies between these persons, which may have been the controversies arising out of the matters involved in the present case. The instrument, then, so far as it went, was proper in this point of view, for the consideration of the jury.

[3.] The next question for our consideration, is raised upon that portion of the charge of the Court, in which his Honor instructed the jury that by the execution " Of the marriage settlement, the title (to the negroes therein contained) passed out of John L. McIntosh to the trustees" ; and that the negroes in question "Never belonged to the estate of John L. McIntosh : towards these negroes the defendant never had occupied the character of administrator : when the coverture closed, the trust was executed", &c.    That neither Mrs. Smith nor her heirs would take the property, but "At her death it would pass to the right heirs of John L. McIntosh".

This was a deed of marriage settlement, by which the husband, John L. McIntosh, conveyed the negroes therein named to certain trustees, the survivor or survivors, and their representatives, in consideration of a contemplated marriage with Agnes Harrell (now the complainant Mrs. Smith) " To the use and behoof of Agnes Harrell, the intended wife of the said John L. McIntosh, during her natural life", and after her death in trust " To and for the use and behoof the child or children" of the husband and wife ; and in default of such issue, it was therein and thereby contracted, that " The property should revert and become the property of John L. McIntosh, his heirs and assigns forever".

It will be observed, that the words " To the sole and separate use" of the wife are wanting in this instrument.    But it is to be inferred from the character of the conveyance, (being a settlement by husband upon wife) that the life interest conveyed, was intended as a separate estate.    This presumption, however, can extend no further than that coverture ; for it relates to that only, and there is nothing in the instrument, or the cir-

cumstances which will authorize a conclusion, that it was intended to extend further.

Our construction, then, of such an instrument is, that the legal title to the property conveyed, at the period of its execution, passed out of John L. McIntosh into the trustees, for the purpose of securing the wife's enjoyment of the same during the coverture, for the purpose of protecting it against the marital rights, and of preserving the executory gift in the nature of a contingent remainder to children, who might be born of that coverture.

Whilst the coverture lasted, there was occasion for the intervention of trustees for the reason and purposes stated, and whilst there remained possibility of issue of the coverture, there remained a contingency on which the gift over was to take effect. (2 *Black. Com.* 109. 1 *Fearne,* 217.) And in legal contemplation, a propriety, if not necessity, for the appointment of trustees to secure and preserve the same. But when the coverture had terminated by the death of John L. McIntosh without leaving children, there was neither a necessity for the interposition of these trustees, and a continuance of the trust to protect a separate estate, which terminated with this coverture, nor to preserve and give effect to the contingent gift. (*Hawley vs. James,* 5 *Paige Ch. R.* 466. *Liptrot's Adm'r. vs. Holmes,* 1 *Kelly,* 389, 390.) "It is a general rule that the legal estate in the trustees shall be carried so far only as is necessary to effectuate the several intentions of the will". (5 *Taunton,* 385, *Doe vs. Barthrop.*)

We desire to be distinctly understood, as placing our opinion, that the separate estate in Mrs. McIntosh, created by this instrument, terminated with the coverture, and did not extend into her second marriage, on the definite ground, that the terms of the settlement authorized no further continuance of such estate.

The result was, that when this coverture terminated by the death of John L. McIntosh, without off-spring from the parties to it, the life-estate was executed in Mrs. McIntosh (now Mrs.

Smith) and the interest of the heir of John L. McIntosh, which before was contingent, became at once a certain and vested interest in the nature of a remainder, taking effect in Mrs. Atwood (the wife of defendant) as the person *who would answer the description of right heir to John L. McIntosh, if living at the termination of the life estate, subject to be divested in favor of any other person, who, upon the death of Mrs. McIntosh, might answer that description.* (4 *Kent's Com.* 201, 202.)

Of course Mrs. Smith could not answer such description, as the case is put upon the predicate of her death. John L. McIntosh too, being dead, the property could not revert to him; but must take the other direction specified, viz: vest in his heirs.

It could not, therefore, become property of his estate in any point of view—his administrator could have no authority over it; and the charge of the Court was correct on these points.

[4.] It is also insisted, that the Court erred in charging that the complainant, who sues for the recovery of the negroes contained in the marriage settlement, and in the possession of Atwood, is barred by the Statute of Limitations, if the possession was taken under the release, and was held adversely by the complainant. To this charge we can see no valid objection.

The question was put upon the distinct fact of adverse possession. Under the views we have already expressed, the life estate in these negroes took effect fully in Mrs. Smith, when she became discovert. It vested, then, in her second husband, when she again became covert. He had the right to alienate the same, and if he did so by the contract with Atwood, possession adverse to the complainant, when she again became discovert, was taken under such alienation of this property, the Statute commenced to run against her; and, as appears by the facts in the record, operated a bar to the claim.

The next question which is presented in this record, arises out of the alleged execution of the release or assignment, to which reference has been made.

[5.] It is insisted, that the Court below erred in charging, that proof of such instrument might be furnished by the an-

swer, if the same were responsive to the allegations of the bill; and that the answer on this subject was so responsive.

In the first of these bills, the defendant is called on to say, "By what pretended claim he refused to give possession" of the property, &c. In the second, he is required to state "Upon what pretences he refused to give up such possession", &c. When, therefore, he replies to these calls, whether there was anything in other parts of the bill which laid the foundation for them or not, setting forth the release as the claim which he was asserting, and by reason of which he refused to deliver possession, he directly responded.

It is true, that if a complainant does not lay the foundation for an interrogatory which he addresses to the defendant, in the stating or charging portions of his bill, such defendant is not required to answer the interrogatory. But if a complainant do insert such interrogatory without such foundation, he does so at his peril, if the same relate to the matter in issue; and he must be bound by a pertinent answer. A different rule would encourage an unscrupulous pleader to take the chances of a favorable answer to a fishing interrogatory; and if the answer was such as was not wanted, then to object, on the ground that his own interrogatory was not authorized.

It is urged that the answer is not responsive on this point, because the defendant is, by this release, setting up matter in his answer by way of discharge; and that such matter must therefore be proven. Undoubtedly, a bill may be so framed as not to call for matter in discharge, and while asking for discovery as to the matters on which discovery is needed for the complainant; yet avoiding to call for matter in discharge. In such event, it may perhaps be successfully contended, that such matter, if set forth in the answer, is not responsive; and must be otherwise proven. But this bill, so far as these interrogatories are concerned, is (probably designedly so) differently framed.

[6.] Objection was made to this release, on the ground that the same was obtained by duress; and that the Court erred in charging the jury, that if the defendant was fairly in the pros-

ecution of his legal rights, the imprisonment of Smith was not sufficient to authorize the setting aside the release.

It is now urged, that admitting the arrest was legal ; yet the defendant may have used a legal arrest, to the unfair and illegal purpose of extorting a settlement of controversies advantageous to himself. The record shows, that the language of the Court was, that " If the defendant was *only* fairly in the prosecution of his legal rights by imprisoning Smith, the release cannot be set aside on that ground." Defendant could not have been *fairly* in the prosecution of his legal rights *only*, if he were using a legal arrest for an unlawful purpose ; and *so* we think the Court must have been understood by the jury.

[7.] Upon the subject of the release or relinquishment in question, the Court further charged the jury, that if the relinquishment was made " With her (Mrs. Smith's) consent, she is barred and forever" ; and this is assigned as error.

This charge was made, as appears by the record, in connection with a consideration of the right of complainant in the second bill, to recover her distributive share in the estate of John L. McIntosh.

It was contended that this relinquishment, if fairly obtained from Smith, was of property which he had not reduced into possession, in which the wife was entitled to her right of survivorship, and out of which to an equitable provision.

It is known that there is a difference between the wife's right of survivorship, and her equity, as it is commonly called. The first may be assigned by the husband, for a valuable consideration, without her consent. (*Clancy on Husb. & W.* 104. *Schuyler vs. Hoyle,* 5 *John. Ch. R.* 195.) The second cannot be assigned, except with her consent. And this consent is required to be manifested in a certain formal way.— (*Clancy,* 537.)

Now this assignment or relinquishment by Smith to the defendant, effectually disposes of the wife's right of survivorship to her share in this estate, according to this rule, even without her consent. It does not, however, appear that her consent at the time of assignment, to part with the right to an equita-

ble provision out of the property, has been manifested in the formal way, ordinarily required in such cases. But it may well be held, that if she gave her consent to this settlement between her husband and Atwood, and knew that the former received and retained certain negroes in pursuance of the settlement, and for many years after she was discovert acquiesced in this arrangement, and took no steps to assert her claim, it is now right and just that she should be estopped from insisting on her equity, as to the negroes retained by Atwood. Whether or not she did give such consent, and thus acquiesce in the arrangement, was a fact to be determined by the jury; and was submitted to them.

It was urged by the counsel for the plaintiff, that there was no evidence in the record, going to show such consent and acquiescence.

We think otherwise. There was evidence to this effect: 1. In the statement (which was admitted to be in proof) that Mrs. Smith was in Macon at the time of her husband's arrest and imprisonment, on the 4th January, 1828; from which, it is fair to presume that she knew of the controversy about the negroes—its character and settlement, by which her husband was discharged. 2. In the fact that certain of these negroes afterwards continued to remain in her husband's possession, without claim from defendant, until purchase of them by that husband. 3. That Scott Cray relates a conversation which he had with her presently after this sale, in which she spoke of it, and expressed her satisfaction that the negroes were going back to their old home. 4. The acquiescence, for a considerable time, continued after she became discovert, though having the knowledge of which, the above facts may be considered suggestive. These were facts and considerations to which the jury may very properly have looked, for evidence of the consent spoken of by the Court.

[8.] But it was also contended for the complainant, that as to this distributive share of the estate of John L. McIntosh, the defendant occupied the relation of trustee, and the Statute cannot be allowed to run between him and his *cestui que*

*trust.* Admitting that the facts show that the defendant was administrator, as alledged; yet they also show that he was the assignee of Smith; and it was left for the jury to decide whether or not this was with the consent of the complainant. If this was found to be so, then he was holding, and claiming to hold, by virtue of this assignment; and this was possession adverse to the claim of complainant. The charge of the Court was therefore right, that if this was found to be true by the jury, and Mrs. Smith had knowledge of it, the Statute ran in Atwood's favor, notwithstanding his character as administrator; inasmuch as Mrs. Smith was a *feme sole*, from 1836, and might have brought suit against him.

[9.] There was a general assignment of error on the whole charge of the Court, without specification. We are of the opinion that this is not a proper assignment, where there are many points involved in the charge. It is the privilege of the plaintiff in error to except to the whole charge if he please; but in such case, he must specify in the assignment of errors, the several portions of the charge relating to distinct points, to which he excepts. The assignment of errors is intended in this way to be productive of convenience, and in advancement of justice; and hence the rule requiring it.

We believe that we have considered all the material points discussed for the plaintiff in error; but if we have not, we are sure that we have expressed our opinions upon all that properly appear in the assignment of errors.

Judgment affirmed.