**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES, J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

June 25, 2021

# In the Court of Appeals of Georgia

A21A0591. WALKER v. THE STATE.

MILLER, Presiding Judge.

A Henry County jury found Joseph Gene Walker guilty of a violation of a sexual offender restriction, child molestation, loitering and prowling, public indecency, public drunkenness, and obstruction of an officer. The trial court imposed a 30-year sentence, with the first 15 years to be served in confinement and the remainder to be served on probation. Walker appeals from his convictions and sentence, arguing that (1) the evidence was insufficient to sustain his conviction for violation of a sexual offender restriction; (2) his trial counsel rendered ineffective assistance of counsel by failing to file a demurrer to the violation of a sexual restriction offense; (3) the trial court erred by denying his motion to bifurcate the proceedings; (4) the trial court erred by allowing the State to present victim impact

testimony in the guilt phase of his trial; and (5) the cumulative effect of the errors warrants a new trial. For the reasons that follow, we reverse Walker's conviction for violation of a sexual offender restriction, but we affirm Walker's remaining convictions.

Viewed in the light most favorable to the jury's verdicts,[1] the record adduced at trial shows that in July 2017, Donique Goode lived with her four year-old son at the Echelon Park Apartments in Henry County, Georgia, and Goode's 16 year-old niece, Danira West, visited her that summer. While Goode was at work on July 29, 2017, West took Goode's 4 year-old son to the park across from the home and noticed that a man, whom she later identified as Walker, watched her as she played with Goode's son. As West continued to play with Goode's son at the playground, West saw Walker touch his penis. West testified that Walker's penis was out of his pants, that she saw Walker's penis as he "touched" it, and she described Walker's movements as him "shaking his penis." West said that it appeared that Walker wanted her to see him touching his penis, and he continued touching his penis as he walked up a nearby stairway. West then called Goode who then called 911.[2]

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[2] Goode's 911 call was admitted into evidence and played for the jury.

Michael Blythe, a police officer with the McDonough Police Department, was dispatched to the playground. As Officer Blythe drove around the apartment complex searching for Walker, West flagged him down, told him that her aunt had called 911, and recounted to him Walker's actions. While speaking with Officer Blythe, West saw Walker nearby and pointed him out to Officer Blythe, and Officer Blythe ordered Walker to come out from among the bushes. At that point, Walker took off running in another direction, and Officer Blythe and another officer who responded to the playground chased after Walker as he continued to flee the area. After Walker was apprehended, Officer Blythe smelled the odor of alcohol from Walker and asked him if he had been drinking, and Walker answered that he had drunk a margarita.

Walker was indicted on one count of violation of a sexual offender restriction (OCGA § 42-1-15), two counts of child molestation (OCGA § 16-6-4 (a)), one count of loitering or prowling (OCGA § 16-11-36), one count of public indecency (OCGA § 16-6-8), one count of public drunkenness (OCGA § 16-11-41), and one count of obstruction of an officer (OCGA § 16-10-24 (a)). The jury found Walker guilty on all counts, and the trial court imposed a 30-year sentence, with the first 15 years to be served in confinement and the remainder to be served on probation. Walker

subsequently filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

1. First, Walker argues that the evidence was insufficient to sustain his conviction for violation of a sexual offender restriction because the State failed to present evidence that he committed a crime that required registration on or after July 1, 2008. After a close review of the relevant statutory provisions, we agree and reverse Walker's conviction on this count.

Ordinarily, when reviewing a sufficiency of the evidence claim, the standard we apply is "whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. This court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." (Citation omitted.) *Little v. State*, 332 Ga. App. 553 (1) (774 SE2d 132) (2015). Because Walker's sufficiency of the evidence claim primarily involves the interpretation of a statute, however, "[a]s in all appeals involving the construction of statutes, our review is conducted under a de novo standard." (Citation omitted.) *Williams v. State*, 299 Ga. 632, 633 (791 SE2d 55) (2016).

"Pursuant to the rules of statutory construction, we presume that the General Assembly meant what it said and said what it meant." *Williams*, supra, 299 Ga. at 633. Additionally,

> [i]n statutory interpretation cases such as this, it is well settled that a statute draws its meaning from its text. When interpreting a statute, we must give the text its plain and ordinary meaning, view it in the context in which it appears, and read it in its most natural and reasonable way. For context, we may look to other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question.

(Citations and punctuation omitted.) *State v. Coleman*, 306 Ga. 529, 530 (832 SE2d 389) (2019).

Here, Count 1 of the indictment alleged that Walker violated OCGA § 42-1-15, which states in relevant part that "it shall be unlawful for any individual or for any person who is or should be registered on another state's sexual offender registry to loiter, as prohibited by Code Section 16-11-36, at any child care facility, school, or area where minors congregate." OCGA § 42-1-15 (d). As reflected above, this particular subsection of the statute, by itself, does not contain any date limitations or constraints as to when the defendant's prior act occurred. In looking at the statutory

scheme, however, we note that OCGA § 42-1-15 is titled in part: "Restrictions on residence of or loitering by registered sex offender *for acts committed after July 1, 2008*[.]" (Emphasis supplied.)

Moreover, in looking at the structure of OCGA § 42-1-15, we note that this statute is situated next to two similar statutory provisions within the same article that have nearly identical titles and provisions, but contain different date limitations. OCGA § 42-1-16 is titled in part, "[r]estrictions on residence of or loitering by registered sex offender for acts committed between July 1, 2006 and June 30, 2008[,]" and contains several provisions within the statute that specify date limitations.[3] Notably, OCGA § 42-1-15 and OCGA § 42-1-16 both contain identical provisions prohibiting an individual who is required to register from loitering at any child care facility, school, or area where minors congregate.[4] Further, OCGA § 42-1-17 is partly titled, "[r]estrictions on residence of or loitering by registered sex offender for acts

---

[3] For example OCGA § 42-1-16 (b) states that "[a]ny individual who committed an act *between July 1, 2006, and June 30, 2008*, for which such individual is required to register shall not reside within 1,000 feet of any child care facility, church, school, or area where minors congregate. (Emphasis supplied).

[4] See OCGA §§ 42-1-15 (d), 42-1-16 (d) ("[I]t shall be unlawful for any individual to loiter, as prohibited by Code Section 16-11-36, at any child care facility, school, or area where minors congregate.").

6

committed between June 4, 2003 and June 30, 2006[.]" That statute also contains several provisions with date limitations.[5]

Based on our analysis of the statutory scheme, we are compelled to conclude that OCGA § 42-1-15 (d) only applies to acts requiring registry that were committed on or after July 1, 2008. The legislature titled OCGA § 42-1-15 as "*[r]estrictions on residence of or loitering by registered sex offender for acts committed after July 1, 2008[,]*" and the legislature enacted other statutes with similar or identical provisions within the same article that expressly contain date limitations, which evinces an intent on the part of the legislature that OCGA § 42-1-15 and the loitering prohibition therein only applies to those who are required to register for acts that were committed during a specific time period.

We reject the State's argument that the legislature did not intend for the date limitation to apply to the entire statute. The State's argument is based on the fact that, because Walker was an "individual"[6] under OCGA § 42-1-15 and therefore required

---

[5] See, e.g., OCGA § 42-1-17 (b) ("Any individual who committed an act between June 4, 2003, and June 30, 2006, for which such individual is required to register shall not reside within 1,000 feet of any child care facility, school, or area where minors congregate.").

[6] OCGA § 42-1-15 (a) (1) defines "individual" as "a person who is required to register pursuant to OCGA § 42-1-12." OCGA § 42-1-12 (a) (9) (B) (xi) requires a

7

to register as a sexual offender, the prohibition against loitering by an "individual" in OCGA § 42-1-15 (d) was applicable to Walker. We do not construe OCGA § 42-1-15 in such a manner. We note that OCGA § 42-1-16 (a) (2) also defines "individual" in the same manner as OCGA § 42-1-15 (a) (1), and it also contains an identical provision to OCGA § 42-1-15 (d) that prohibits sexual offenders from loitering. See OCGA § 42-1-16 (d) (prohibiting sexual offenders from loitering at any child care facility, school, or areas where minors congregate). In construing statutes, we adhere to the fundamental principle "that require[s] us to construe the statute[s] according to [their] terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage." (Citation omitted.) *Coates v. State*, 304 Ga. 329, 330 (818 SE2d 622) (2018). Additionally, "all statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. They are therefore to be construed in connection and in harmony with existing law[,]" "and we [do] not presume that the legislature intended that any part of the criminal code to be without meaning[.]" (Citations and punctuation omitted.) *Mahone v. State*, 348 Ga. App. 491, 495-496 (2)

person to register as a sexual offender if they have been convicted for "[a]ny conduct which, by its nature, is a sexual offense against a victim who is a minor[]" which was committed after June 30, 2001.

(823 SE2d 813) (2019). Because the State's interpretation of OCGA § 42-1-15 (d) would render OCGA § 42-1-16 (d) meaningless and mere surplusage, we reject the State's interpretation and hold that OCGA § 42-1-15 (d) applies to acts requiring registry that were committed on or after July 1, 2008.

Turning to the evidence presented for this offense, the State presented evidence that Walker was required to register as a sexual offender due to his conviction for statutory rape that occurred in October 2002. Given our holding that the loitering prohibition in OCGA § 42-1-15 (d) applies only to acts requiring registry that were committed on or after July 1, 2008, Walker's statutory rape conviction which occurred in October 2002 was insufficient to prove a violation of the loitering provision in OCGA § 42-1-15 (d), and we therefore reverse his conviction and vacate the sentence entered on that count.

2. Second, Walker argues that his trial counsel rendered ineffective assistance of counsel by failing to file a general demurrer to the violation of a sexual offender restriction offense. Because we have reversed Walker's conviction on this count, this claim is moot. See *Johnson v. State*, 214 Ga. App. 77, 81 (2) (447 SE2d 74) (1994) (claim that counsel was ineffective for failing to file a motion for directed verdict on

9

a count of conviction was moot once Court of Appeals concluded that the evidence was insufficient to support that conviction).

3. Next, Walker argues that the trial court erred by denying his motion to bifurcate the violation of a sexual offender restriction charge from the remaining charges. We conclude that, pretermitting whether the trial court erred by denying Walker's motion to bifurcate, any error was harmless.

> The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict. And in considering whether a trial court's error was harmful, we weigh the evidence as we would expect reasonable jurors to have done so, as opposed to assuming that they took the most pro-guilt possible view of every bit of evidence in the case.

(Citations and punctuation omitted.) *Lofton v. State*, 309 Ga. 349, 356-357 (3) (b) (846 SE2d 57) (2020); see also *Mangrum v. State*, 244 Ga. App. 559 (536 SE2d 217) (2000) (applying harmless error test to defendant's claim that the trial court erred by failing to sever the offenses).

Here, Walker made a motion to bifurcate the violation of a sexual offender restriction from the remaining charges, arguing that his status as a registered sex

10

offender was irrelevant to the other charges and that he would be prejudiced by the admission of that evidence at trial. The trial court, however, denied Walker's motion.

We conclude that, pretermitting whether the trial court erred by denying Walker's motion to bifurcate the violation of a sexual offender restriction charge from the remaining charges, any error was harmless. The State presented testimony from West that Walker took his penis out of his pants and began touching and "shaking his penis" while she and her cousin played at a playground West further testified that it appeared that Walker wanted to make sure that she saw him touching his penis. Additionally, Walker fled from law enforcement after West identified him to the police officers, and the officers noticed the odor of alcohol emanating from Walker after he was apprehended. In light of this evidence, we conclude that any error in the trial court's denial of Walker's motion to bifurcate the proceedings was harmless. See *Mangrum*, 244 Ga. App. at 559 (holding that the trial court's error in denying the defendant's motion to sever the offenses was harmless where the State presented strong evidence of the defendant's guilt).

4. Walker further argues that the trial court erred by allowing the State to present victim impact evidence during the guilt phase of his trial. We agree that the

11

trial court erred by permitting the State to present victim impact evidence during the guilt phase of Walker's trial, but we conclude that the error was harmless.

The admissibility of victim impact evidence is reviewed for abuse of discretion. See *Lawler v. State*, 276 Ga. 229, 232 (3) (576 SE2d 841) (2003) (reviewing the admissibility of victim impact testimony under the abuse of discretion standard).

"Under Georgia law, evidence about a crime victim's personal characteristics and the emotional impact of the crime on the victim, the victim's family, and the victim's community generally is not admissible in the guilt/innocence phase of a criminal trial." *Lofton*, supra, 309 Ga. at 363 (6) (b) (ii). This is because "background information about the victim that is not relevant to the issues in the guilt/innocence phase, particularly the sort of background information likely to engender the jury's sympathies, should not be presented to the jury during that phase." (Citation omitted.) Id. at 363-364 (6) (b) (ii).

Here, over Walker's objection, the State questioned West as to how Walker's actions impacted her, and West responded that she pays attention when someone is watching her to make sure that they would not try to harm her. The State also

questioned West about whether she has visited Goode at her apartment since the incident, and West responded that she had not returned to Goode's home.

We conclude that the trial court erred by permitting the State to present victim impact testimony from West in the guilt phase of his trial. West's testimony about how Walker's actions subsequently affected her daily life was not relevant to the jury's determination of Walker's guilt and inappropriately appealed to the jury's sympathies. See *Lofton*, supra, 309 Ga. at 364 (6) (b) (ii) (holding that the admission of evidence relating to the victim's career progression and his father's death was inadmissible during the guilt phase of the defendant's trial because the evidence was not relevant to the determination of the defendant's guilt and it inappropriately appealed to the jury's sympathies).

Nevertheless, we conclude that the error in the admission of the victim impact evidence was harmless. See *Willis v. State*, 304 Ga. 686, 715-716 (16) (820 SE2d 640) (2018) (applying harmless error test to the improper admission of victim impact testimony). As stated above in Division 3, the State presented testimony from West that Walker took his penis out of his pants and began touching and "shaking his penis." West further testified that it appeared that Walker wanted to make sure that she saw him touching his penis. Additionally, Walker fled from law enforcement after

13

West identified him to the police officers, and the officers noticed the odor of alcohol emanating from Walker after he was apprehended. Therefore, in light of this strong evidence of guilt, we conclude that the error in the admission of impact testimony during the guilt phase of Walker's trial was harmless. See id. (holding that the error in the admission of the victim impact evidence was harmless because the State presented strong evidence of the defendant's guilt).

5. Lastly, Walker argues that the cumulative effect of the errors by the trial court and his trial counsel entitles him to a new trial.

> Georgia has recently adopted a cumulative error rule, stating that Georgia courts considering whether a criminal defendant is entitled to a new trial should consider collectively the prejudicial effect of trial court errors and any deficient performance by counsel — at least where those errors by the court and counsel involve evidentiary issues.

(Citation and punctuation omitted.) *Showers v. State*, 353 Ga. App. 754, 761 (2) (d) (839 SE2d 245) (2020).

In this case, we have considered the pretermitted error of the trial court's denial of Walker's motion to bifurcate and the improper admission of victim impact testimony, and we conclude that the cumulative effect of these errors does not warrant a new trial in light of the strong evidence of Walker's guilt. See *Allen v. State*, 310

14

Ga. 411, 417 (4) (851 SE2d 541) (2020) (holding that the cumulative effect of the trial court's errors did not warrant a new trial).

Accordingly, for the reasons stated above, we reverse Walker's conviction for violation of a sexual offender restriction, but we affirm his remaining convictions.

*Judgment affirmed in part and reversed in part. Hodges, J., and Senior Appellate Judge Herbet E. Phipps, concur.*